**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

**DELORES YBARRA,**                                        **03:10-CV-949-BR**

       **Plaintiff,**

                                       **OPINION AND ORDER**

**v.**

**COMMISSIONER OF SOCIAL**
**SECURITY**

       **Defendant.**

**TIM WILBORN**
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR 97045
(503) 632-1120

       Attorney for Plaintiff

1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
District of Oregon
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**FRANCO L. BECIA**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA  98104-7075
(206) 615-2522

          Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Delores Ybarra seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he denied Plaintiff's application

for Disability Insurance Benefits (DIB) on April 7, 2010.  This

Court has jurisdiction to review the Commissioner's final

decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **REVERSES** the decision

of the Commissioner and **REMANDS** this matter pursuant to sentence

four of 42 U.S.C. § 405(g) for further administrative proceedings

consistent with this Opinion and Order.


2 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB benefits on November 20, 1998.  The Administrative Law Judge (ALJ) issued an opinion on June 29, 2001, in which he determined Plaintiff was not disabled and, therefore, was not entitled to benefits. Plaintiff appealed this decision, but the Appeals Council denied review.  On March 29, 2002, the ALJ's decision became the final decision of the Commissioner pursuant to 20 C.F.R. § 404.981.

Plaintiff filed his current application for DIB benefits on July 23, 2002, and alleged a disability onset date of November 20, 1998.  Tr. 64-67.[1]  Plaintiff's July 23, 2002, application was denied initially and on reconsideration. Tr. 48, 49.  The ALJ held a hearing on May 20, 2004.  Tr. 1046-79.  At the hearing, Plaintiff was not represented by an attorney.  Plaintiff and a vocational expert (VE) testified.  The ALJ issued a decision on July 14, 2004, in which he found Plaintiff could only allege a disability onset date of June 30, 2001, because Plaintiff did not challenge the ALJ's previous determination of nondisability through June 29, 2001. The ALJ then concluded Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 510-22.  Plaintiff does not challenge the ALJ's determination as to the onset date.

_____

[1]  Citations to the official transcript of record filed by the Commissioner on August 26, 2010, are referred to as "Tr."

Plaintiff appealed the ALJ's decision that Plaintiff is not disabled.  The Appeals Council upon review remanded the case to the ALJ on October 7, 2004, to consider, among other things, the effect of the prior determination of nondisability.  Tr. 528-31. The ALJ held a second hearing on August 3, 2005, and issued a decision on February 16, 2006, in which he again found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 13-37.  Plaintiff appealed, and the Appeals Council denied Plaintiff's request for review.  The ALJ's decision became the final decision of the Commissioner on October 12, 2007.

Plaintiff filed a complaint in this Court on December 7, 2007.  Tr. 7-9.  On March 13, 2009, the case was remanded with instructions to the ALJ to

> (1) consider the evidence from Mountain View
> Physical Therapy appearing at (Tr. 542-61),
> (2) consider whether the transcript of
> plaintiff's hearing testimony should be
> included in the record, (3) take additional
> VE testimony based on a hypothetical question
> that includes all the limitations identified
> in the ALJ's assessment of plaintiff's RFC,
> (4) ensure that the VE's testimony is
> consistent with the Dictionary of
> Occupational Titles, or provide sufficient
> reasons to support deviation from the DOT,
> and (5) issue a new decision based on the
> five-step evaluation specified in Section
> 404.1520, Title 20, Code of Federal
> Regulations.

Tr. 684-91.

On remand another ALJ held a hearing on February 4, 2010. Tr. 1080-95.  Plaintiff was not represented by an attorney.

4 - OPINION AND ORDER

Tr. 672, 1080.  Plaintiff and a VE testified.  Tr. 1081, 1083-92.
Pursuant to 20 C.F.R. § 404.984(d), the ALJ's decision became the
final decision of the Commissioner on June 14, 2010, when the
Appeals Council denied Plaintiff's request for review.  Tr. 665-
67.  Plaintiff again filed a Complaint with this Court on
August 12, 2010.


## BACKGROUND

Plaintiff was born on September 5, 1953, and was 50 years
old on the date last insured.  Tr. 562, 682, 1093.  Plaintiff has
a bachelor's degree.  Tr. 89, 682, 1089.  Plaintiff is a veteran
of the United States Air Force and the United States Air National
Guard.  Tr. 145.

Plaintiff alleges disability due to depression, degenerative
disc disease of the spine, and prostatitis.  Tr. 83.  Before
Plaintiff's date last insured, the Veterans Administration (VA)
found Plaintiff to be 100% unemployable due largely to major
depression, chronic prostatitis, and back strain with
degenerative joint disease of the lumbar spine.  Tr. 142, 730.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 676-81.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

**I.   The Regulatory Sequential Evaluation.**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.920.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 404.920(a)(4).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.920(e). *See also* Soc. Sec. Ruling (SSR) 96-8p. A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of

'disabled' and 'not disabled.'"    SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.    *Stout*, 454 F.3d at 1052.    *See also*
20 C.F.R. § 404.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.    *Stout*, 454 F.3d at 1052.    *See also* 20
C.F.R. § 404.920(a)(4)(v).    Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do.    *Tackett v. Apfel*, 180
F.3d 1094, 1098 (9th Cir. 1999).    The Commissioner may satisfy
this burden through the testimony of a VE or by reference to the
Medical-Vocational Guidelines set forth in the regulations at
20 C.F.R. part 404, subpart P, appendix 2.    If the Commissioner
meets this burden, the claimant is not disabled.    20 C.F.R.
§ 404.920(g)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in
substantial gainful activity since his onset date of
June 30, 2001, through his date last insured of
December 31, 2003.    Tr. 675.

At Step Two, the ALJ found Plaintiff has the severe

impairments of degenerative disc disease, prostatitis, and situational depression.  Tr. 675.  The ALJ found Plaintiff has a moderate limitation in concentration as a result of his situational depression.  Tr. 675.

At Step Three, the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal the criteria for any Listed Impairments in C.F.R. part 404, subpart P, appendix 1.  Tr. 675.  The ALJ also found before December 31, 2003, Plaintiff had the RFC to perform

> medium work as defined in 20 C.F.R. 404.1567(c).  The claimant can lift and carry up to 50 pounds occasionally and 25 pounds frequently, and he can stand or walk up to six hours in an eight hour workday.  The claimant can climb only occasionally.  He cannot perform work in a noisy environment or any environment that may cause damage to a person's hearing.  The claimant is limited to unskilled work.

At Step Four, the ALJ concluded Plaintiff was unable to perform any past relevant work.  Tr. 681.

At Step Five, the ALJ found Plaintiff, through his date last insured, could perform jobs that exist in significant numbers in the national economy including laundry laborer, janitor, and hand-packager.  Tr. 682.  Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 683.

10 - OPINION AND ORDER

**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) rejected the VA's 100% Individual Unemployability Decision, (2) did not include all of Plaintiff's limitations in his assessment of Plaintiff's RFC, (3) improperly rejected Plaintiff's testimony, (4) failed to properly consider the opinions of Plaintiff's physical therapist, (5) improperly rejected the opinion of Psychiatric Mental Health Nurse Practitioner (PMHNP) Berenbach, (6) improperly rejected the lay-witness testimony of Rosalie Serrata and Patricia Hart, and (7) posed an insufficient hypothetical to the VE.

**I.    The ALJ did not err by giving less than great weight to the VA's award of 100% disability to Plaintiff.**

A Social Security disability determination is similar to a VA disability determination in that both are made by federal agencies that provide benefits to those who cannot work due to disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "[A]lthough a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision." *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011)(quoting *McCartey*, 298 F.3d at 1076). *See also* 20 C.F.R. § 404.1504 ("A decision by any . . . other governmental agency about whether you are disabled . . . is based on its rules

and is not our decision . . . .  We must make a . . .
determination based on social security law.  Therefore, a
determination made by another agency . . . is not binding on
us.").  If the ALJ gives less than great weight to a VA
disability determination, however, he must provide "persuasive,
specific, valid reasons for doing so that are supported by the
record."  *McCartey*, 298 F.3d at 1076.

Here the ALJ gave little weight to the VA's disability
determination that Plaintiff was 100% disabled and unemployable
because the VA's determination was contradicted by the medical
evidence in the record.  The VA found Plaintiff is 100% disabled
based in large part on a 70% disability for major depression
(Tr. 730), 20% disability for chronic prostatitis (Tr. 142), and
40% disability for back strain with degenerative joint disease of
the lumbar spine.[2]  Tr. 142.

The ALJ accepted the VA's finding of 20% disability for
prostatitis when he determined Plaintiff is limited to performing
medium-level work.  The ALJ relied on the facts that Plaintiff
has undergone several surgeries for genitalia-related pain and
the lab results from a June 2003 flexible cystoscopy indicated

---

[2] In describing its percentage rating system to Plaintiff
the VA states:
"The percentages of 'individual disabilities' may not add up to
your overall evaluation.  We use a 'combined rating table' to
decide how disabled you are. The percentages in this table are
set by regulation." Tr. 730.

Plaintiff is limited to medium-level work.  Tr. 678-79.  After reviewing the record, the ALJ concluded Plaintiff's prostatitis, however, is not greater than 20%.

The ALJ rejected the VA's 70% disability rating for major depression on the ground that PMHNP Berenbach's Global Assessment of Function (GAF)[3] rating of 45-50 was contradicted by Plaintiff's high level of activity and the opinion of two Disability Determination Services (DDS)[4] psychologists, Dick Wimmers, Ph.D., and Robert Henry, Ph.D.  The DDS psychologists noted that Plaintiff lived alone, was able to do housework, to do laundry, to cook, to shop, to care for himself, to pay bills, to watch television, to listen to the radio, to go to the movies, and even to go shooting with friends at the range.  Tr. 216.  The DDS psychologists also determined Plaintiff's volunteer work was inconsistent with any concentration problems or memory

-------

[3] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100.  A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."  A GAF of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks or moderate difficulty in social, occupational, or school functioning).  *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

[4] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

13 - OPINION AND ORDER

limitations.  Tr. 216.  The DDS psychologists concluded that this high level of activity was inconsistent with a finding of disability.  The ALJ agreed with the DDS psychologists and found Plaintiff's ability to repair cars, to go to the shooting range with friends, to do his own laundry, to prepare his own meals, to paint belt buckles, to refinance his home, and to maintain his finances indicate Plaintiff has a higher level of functioning than reflected in the VA's GAF rating and 70% disability determination for major depression.  Tr. 678.  Thus, the ALJ provided persuasive, specific, and valid reasons for rejecting the VA's 70% disability rating for major depression.

The ALJ also found Plaintiff's lumbar back strain with degenerative disc disease only limited him to a range of medium-level work.  In July 2001 a CT scan of Plaintiff's lumbar spine showed degenerative disc disease.  Plaintiff later complained of back pain to a nurse practitioner, but he, nevertheless, declined pain treatment.  Plaintiff again complained of back pain and joint swelling to Licensed Practical Nurse (LPN) Julie Edmisten during a visit to the VA Medical Center on October 22, 2002.  Plaintiff rated his pain as seven on a scale of one to ten with ten being the worst pain.  Tr. 259.  Plaintiff however, later reports to PMHNP Berenbach on August 22, 2003, that nortripyline was working well in controlling his pain.  Tr. 504.  During a session at Mountain View Physical Therapy, Plaintiff indicated a

pain rating of nine out of ten. Tr. 560. After two months of physical therapy, however, Plaintiff indicated the pain had improved. Tr. 543. The ALJ also noted Plaintiff took only over-the-counter, anti-inflammatory medication throughout this time and only occasionally used Vicodin and anti-depressants to manage his pain. The ALJ found Plaintiff's subjective communication of his pain levels are contradicted by his conservative treatment course, his significant improvement as a result of that conservative treatment course, and his active lifestyle. Tr. 680-81. Thus, the ALJ provided sufficient reasons for determining that Plaintiff's medical records do not support the VA's determination that Plaintiff is 40% disabled due to back pain.

On this record the Court concludes the ALJ did not err when he gave little weight to the VA's disability determination because he provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**II. The ALJ did not err when he rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he failed to provide clear and convincing reasons for rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment

or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

Here the ALJ found Plaintiff's medically determinable impairment could reasonably be expected to cause his alleged symptoms, but the ALJ concluded Plaintiff's statements about the level of pain he experienced were inconsistent with the medical evidence, Plaintiff's active lifestyle, and Plaintiff's conservative treatment history.

Evidence of conservative treatment is a sufficient reason "to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 751 (internal quotation omitted). Here the ALJ pointed out that even though Plaintiff's

16 - OPINION AND ORDER

"testimony has been reflective of extremely debilitating pain [stated his pain is seven to nine on a scale of ten with ten being the worst pain], . . . the findings revealed by radiology studies have been slight, and the claimant's treatment course has been quite conservative."  Tr. 681.  In fact, on September 25, 2003 Plaintiff reported to NP Lindy S. Gomez that over-the-counter, anti-inflammatory medication with occasional use of Vicodin worked well in treating his pain.  Tr. 499.

The ALJ also found Plaintiff's active lifestyle contradicted Plaintiff's testimony regarding his level of pain.  The ALJ noted Plaintiff was, among other things, able to repair cars, to go with friends to the shooting range, to do his own laundry, to prepare his own meals, and to paint belt buckles.  The ALJ, therefore, concluded Plaintiff's "daily activities are not consistent with disability" and Plaintiff "maintained a pretty active, independent lifestyle."  Tr. 680.

On this record the Court finds the ALJ did not err when he rejected Plaintiff's testimony because the ALJ provided clear and convincing reasons based on substantial evidence in the record for doing so.

### III. The ALJ did not err when he discounted the opinion of "not acceptable medical sources."

Plaintiff contends the ALJ erred when he rejected the opinion of Psychiatric Mental Health Nurse Practitioner (PMHNP) JoAnn G. Berenbach and Plaintiff's physical therapists.  Although

17 - OPINION AND ORDER

psychiatric mental health nurse practitioners and physical
therapists are considered medical sources, they are not
"acceptable medical source[s]" pursuant to 20 C.F.R. § 404.1502.

Medical sources are divided into two categories:
"acceptable" and "not acceptable." 20 C.F.R. § 404.1502.
Acceptable medical sources include licensed physicians and
psychologists. 20 C.F.R. § 404.1502. Medical sources classified
as "not acceptable" include, but are not limited to, nurse
practitioners, therapists, licensed clinical social workers, and
chiropractors. SSR 06-03p, at *2.

> With the growth of managed health care in
> recent years and the emphasis on containing
> medical costs, medical sources who are not
> acceptable medical sources, such as nurse
> practitioners, physician assistants, and
> licensed clinical social workers, have
> increasingly assumed a greater percentage of
> the treatment and evaluation functions
> previously handled primarily by physicians
> and psychologists. Opinions from these
> medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated
> on key issues such as impairment severity and
> functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3.

Factors the ALJ should consider when determining the weight
to give an opinion from these "important" sources include: the
length of time the source has known the claimant and the number
of times and frequency that the source has seen the claimant; the
consistency of the source's opinion with other evidence in the

18 - OPINION AND ORDER

record; the relevance of the source's opinion; the quality of the
source's explanation of his opinion; and the source's training
and expertise.  SSR 06-03p, at *4.

> Although there is a distinction between what
> an adjudicator must consider and what the
> adjudicator must explain in the disability
> determination or decision, the adjudicator
> generally should explain the weight given to
> opinions from these "other sources," or
> otherwise ensure that the discussion of the
> evidence in the determination or decision
> allows a claimant or subsequent reviewer to
> follow the adjudicator's reasoning, when such
> opinions may have an effect on the outcome of
> the case.

SSR 06-03p, at *6.

**A. PMHNP Berenbach's Opinion.**

Plaintiff contends the ALJ erred when he rejected the
opinion of PMHNP Berenbach.

The ALJ acknowledged PMHNP Berenbach was Plaintiff's
"primary treatment at the VAMC." Tr. 677.  PMHNP Berenbach,
however, is not an "acceptable medical source" nor a "treating"
source.  *See* 20 C.F.R. §§ 404.1502, 1513(d).  In discounting
PMHNP Berenbach's opinion, the ALJ relied on Plaintiff's medical
records, third-party information questionnaires, and the opinions
of DDS psychologists Dick Wimmers, Ph.D., and Robert Henry,
Ph.D., both of whom are considered "acceptable medical sources."
 20 C.F.R. § 404.1513(a).  The ALJ concluded Plaintiff's active
lifestyle documented in his medical records, third-party
information questionnaires, and the notes of the state-reviewing

19 - OPINION AND ORDER

psychologists consistently contradicted PMHNP Berenbach's opinion as to Plaintiff's limitations.

Nevertheless, the ALJ gave some weight to PMHNP Berenbach's opinion and found Plaintiff had a moderate concentration limitation, which is a limitation not found by either DDS psychologist.  Tr. 678.

On this record the Court concludes the ALJ did not err when he gave little weight to PMHNP Berenbach's opinion because he provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**B. Opinions of Plaintiff's Physical Therapists.**

Plaintiff contends the ALJ erred by rejecting the limitations found by Plaintiff's physical therapists.

The ALJ expressly "considered the records from [Plaintiff's] treatment at Mountain View Physical Therapy." Tr. 680.  The ALJ notes Plaintiff showed reduced range of spinal motion and discrete reductions in strength and told his physical therapists that he was "unable to do any bending or lifting without having a pain rating up to a nine on a ten scale." Tr. 680.  The ALJ also noted Plaintiff's physical therapists found Plaintiff scored high on a psychosocial pain rating scale.  Tr. 680, 560.

After summarizing the records from Plaintiff's physical therapists, the ALJ summarizes the opinions of the reviewing state agency physicians that contradict the conclusions drawn

from Plaintiff's physical therapy.  The ALJ rejected Plaintiff's
communicated pain level to his physical therapists because of the
inconsistences between Plaintiff's communicated pain level and
Plaintiff's daily activities.  The ALJ also rejected the range-
of-motion limitations and strength reductions identified by
Plaintiff's physical therapists in light of Plaintiff's ability
to repair cars, to go shooting, and otherwise to live an active,
independent lifestyle that is "not consistent with disabilit[y]."

On this record the Court concludes the ALJ did not err when
he discounted the opinion of Plaintiff's physical therapists
because he provided legally sufficient reasons supported by
substantial evidence in the record for doing so.

**IV.  The ALJ did not err by rejecting the lay-witness testimony
of Rosalie Serrata and Patricia Hart.**

Plaintiff contends the ALJ erred by discounting the lay-
witness testimony of Rosalie Serrata and Patricia Hart,
Plaintiff's friends, without giving germane reasons pertinent to
each witness.

Lay-witness testimony regarding a claimant's symptoms is
competent evidence that the ALJ must consider unless he
"expressly determines to disregard such testimony and gives
reasons germane to each witness for doing so." *Lewis v. Apfel*,
236 F.3d 503, 511 (9th Cir. 2001).

Patricia Hart stated Plaintiff could no longer engage in
competitive shooting or golfing.  She also noted walking causes

21 - OPINION AND ORDER

Plaintiff pain, Plaintiff could not paint belt buckles when his hands hurt, and Plaintiff goes to movies. Tr. 129-40. Rosalie Serrata made similar statements about Plaintiff's daily activities. Tr. 111-122. She also indicated Plaintiff was forgetful. Tr. 114, 120.

Both Rosalie Serrata and Patricia Hart indicated Plaintiff was in severe pain. The ALJ discounted Rosalie Serrata's statements regarding Plaintiff pain, however, because she only saw Plaintiff two or three times a year. Tr. 111. The ALJ also discounted both lay-witness opinions about Plaintiff's pain level because those statements were reiterations of Plaintiff's "subjective complaints and [did] not provide information about their objective observations." Tr. 681. In addition, the ALJ had already discounted Plaintiff's subjective testimony regarding his pain level. Thus, the ALJ found the lay-witness statements regarding Plaintiff's daily activities to be credible, but rejected the statements regarding Plaintiff's level of pain.

Based on this record, the Court finds the ALJ did not err when he gave little weight to the lay-witness testimony of Rosalie Serrata and Patricia Hart because the ALJ gave reasons germane to each witness for doing so.

**V.  The ALJ erred in his assessment of Plaintiff's RFC.**

Plaintiff contends the ALJ erred in his assessment of

Plaintiff's RFC because even though the ALJ found Plaintiff has "moderate" difficulties in maintaining concentration, the ALJ did not include those limitations in his evaluation of Plaintiff's RFC.  The Commissioner, however, contends the ALJ addressed Plaintiff's moderate limitations in maintaining concentration in his assessment of Plaintiff's RFC when the ALJ limited Plaintiff to "unskilled" work.  Unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

In *Brink v. Commissioner Social Security Administration*, the Ninth Circuit specifically rejected an argument similar to Defendant's argument:

> Here, the administrative law judge ("ALJ") accepted medical evidence that Brink has moderate difficulty maintaining concentration, persistence, or pace. However, the ALJ's initial hypothetical question to the vocational expert referenced only "simple, repetitive work," without including limitations on concentration, persistence or pace. This was error.
>
> The Commissioner's contention that the phrase "simple, repetitive work" encompasses difficulties with concentration, persistence, or pace is not persuasive.  Indeed, repetitive, assembly-line work of the type described by the expert might well require extensive focus or speed.
>
> * * *
>
> Although the ALJ accepted that [the

> plaintiff] has moderate difficulty with
> concentration, persistence, or pace, he
> nevertheless concluded, contrary to the
> vocational expert's testimony, that [the
> plaintiff] can perform certain light work.
> This conclusion was based on an incomplete
> hypothetical question, and is not supported
> by substantial evidence.  The hypothetical
> question to the vocational expert should have
> included not only the limitation to "simple,
> repetitive work," but also [the plaintiff's]
> moderate limitations in concentration,
> persistence, or pace.

343 Fed. App'x 211, 212 (9th Cir. 2009).  *See also Bickford v. Astrue*, 3:09-cv-00833-KI, 2010 WL 4220531, at *11 (D. Or. Oct. 9, 2010); Melton v. Astrue, 3:09-cv-01000-BR, 2010 WL 3853195, at *8 (D. Or. Sept. 9, 2010), *aff'd,* 2011 WL 2727869 (9th Cir. July 12, 2011).

Accordingly, the Court concludes the ALJ erred in his assessment of Plaintiff's RFC because the ALJ did not specifically include Plaintiff's moderate limitations in maintaining concentration.

## VI.  The ALJ posed an insufficient hypothetical to the VE.

Plaintiff contends the ALJ did not pose a sufficient hypothetical to the VE because the ALJ failed to include Plaintiff's moderate limitations in maintaining concentration.

At Step Five the Commissioner must show the claimant can do other work that exists in the national economy.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The Commissioner

can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all of the claimant's limitations. *Id.* The hypothetical posed to a VE may only include those limitations supported by substantial evidence in the record. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 883, 866 (9th Cir. 2006).

As noted, the Court has found the ALJ's inclusion of the limitation of unskilled work in his hypothetical to the VE does not adequately take into account that Plaintiff has limitations in maintaining concentration. Accordingly, the Court concludes on this record that the ALJ erred when he failed to include in the hypothetical posed to the VE Plaintiff's moderate limitations in his ability to maintain concentration.

## **REMAND**

Having found the ALJ erred, the Court must determine whether to remand this matter for further proceedings or to remand for the calculation of benefits. The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such

> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2. The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

Here the Court finds there are outstanding issues to be resolved before a determination of disability can be determined. The Court finds additional proceedings are necessary to allow the ALJ to properly include in his assessment of Plaintiff's RFC the limitations on Plaintiff's ability to maintain concentration and to pose an accurate hypothetical to the VE in order to assess properly whether Plaintiff is able to perform work that exists in the national economy.

Accordingly, the Court concludes on this record that remand for further proceedings is necessary.

**<u>CONCLUSION</u>**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 27th day of September, 2011.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


27 - OPINION AND ORDER